**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip A. Smith; and Amy R. Smith, <br><br> Plaintiffs, <br><br> vs. <br><br> JPMorgan Chase Bank; Washington Mutual Bank, FA; Green Tree Servicing, LLC, <br><br> Defendants. | No. CV-11-8046-PCT-DGC <br><br> **ORDER** |

**I.  Motion to Dismiss by Green Tree Servicing, LLC.**

Defendant Green Tree Servicing, LLC ("Green Tree") moves to dismiss the claims against it. Doc. 15. Plaintiffs, who are represented by counsel, have not filed a response. The Court will grant the motion summarily under Local Rule 7.2(i).

**II.  Remaining Defendants' Motion to Dismiss.**

Defendants JPMorgan Chase Bank, N.A. ("Chase") and Washington Mutual Bank, FA ("WaMu"), hereinafter "Defendants," move to dismiss the claims against them. Doc. 12. Plaintiffs oppose (Doc. 14), and Defendants filed a reply (Doc. 18). The parties do not request oral argument. For the reasons that follow, the Court will grant the motion in part and deny it in part.

**A.  Background and Legal Standards.**

The factual allegations in the complaint are summarized below and are assumed to be true for purposes of a motion to dismiss. In November of 2003, Plaintiffs borrowed

money, under a note secured by a deed of trust, to purchase a property in Flagstaff, Arizona. Doc. 1 at 3-4. Plaintiffs stopped making payments in June 2009, a trustee sale was noticed, Plaintiffs brought the loan current, and the sale was cancelled in January 2010. *Id.* at 11-12. A trustee sale was noticed again in April 2010, Plaintiffs brought the loan current again, and the sale was cancelled in August 2010. *Id.* at 12. At some time during this period, Plaintiffs and Chase were working on a loan modification arrangement, and Plaintiffs made payments under a Forbearance Agreement with the expectation that they would be considered for a modification and that a modification would be forthcoming. *Id.* at 11-13. Plaintiffs received a letter denying a modification on grounds that the property was condemned; Plaintiffs assert that the property was clearly not condemned. *Id.* at 11.

It appears that Plaintiffs are again facing a trustee sale. *See id.* at 18. This time Plaintiffs have filed this action in federal court, pleading the following seven claims for relief: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) misrepresentation, intentional or negligent; (4) violation of A.R.S. § 6-611; (5) quiet title; (6) lack of formation of contract; and (7) declaratory and injunctive relief. Doc. 1. Defendants move to dismiss all claims. Doc. 12.

When analyzing arguments under Rule 12(b)(6), the factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard requires sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950.

### B. Claim 1 – Breach of Contract.

Defendants argue Claim 1 should be dismissed for several reasons: (1) the claim fails to state a breach of contract because attempting to foreclose under a deed of trust without authority "is not *ipso facto* a breach of the Deed of Trust" (Doc. 12 at 5:15-17); (2) Chase, as successor in interest to the original lender WaMu, has the right to invoke the power of sale and, therefore, its foreclosure attempt is not a breach (*id.* at 6); (3) Plaintiffs' allegations of securitization are speculative and unsupported, and, in any case, securitization would not be a breach of the note or the deed of trust because neither preclude securitization – both state they are transferrable and Defendants found no law precluding securitization (*id.* at 6-7); and (4) Plaintiffs have not alleged compensable damages as a result of any alleged securitization (*id.* at 7).

Plaintiffs do not respond to these arguments. *See* Doc. 14. Claim 1 accordingly will be dismissed. LRCiv 7.2(i).

### C. Claim 2 – Breach of the Covenant of Good Faith and Fair Dealing.

Defendants argue that Claim 2 fails because (1) the Notice of Trustee Sale identified Chase as the successor in interest to WaMu thereby disclosing its authority to foreclose; (2) the deed of trust states WaMu, as lender, and its successors, have a right to foreclose under circumstances here; and (3) Plaintiffs have not alleged a benefit to which they were entitled under contract of which Defendants deprived them. Doc. 12 at 7-8.

Plaintiffs respond that if Chase is in fact the lender's successor and owner of the note, then Chase has a contract with Plaintiffs and breached the covenant of good faith implied in the contract. Doc. 14 at 9. Plaintiffs argue that the breach consisted of misrepresenting to Plaintiffs they could modify the terms of their note, failing to present evidence of the forecloser's authority upon request, and failing to provide evidence that Chase is the holder of the note or an authorized agent of the note holder(s). *Id.* at 9-10. Defendants reply that Plaintiffs failed to cite authority supporting their entitlement to a modification or to the information demanded from Chase. Doc. 18 at 7.

Under Arizona law, the covenant of good faith and fair dealing is implied in every contract, and the "duty arises by virtue of a contractual relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986) (citations omitted). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* To determine whether a plaintiff has an actionable claim for breach of the covenant of good faith and fair dealing, it is first necessary to determine what benefits flow from the contract or contractual relationship. *Rawlings*, 726 P.2d at 571 ("Similarly, the implied covenant in an insurance contract neither entitles the insured to payment of claims that are excluded by the policy, nor to protection in excess of that which is provided for in the contract, nor to anything inconsistent with the limitations contained in the contract.").

Plaintiffs argue that the breach consisted of, in part, misrepresenting to Plaintiffs they could modify the terms of their note. Doc. 14 at 9-10. This is not how the complaint was pled (Doc. 1 ¶ 78), and the Court may not look beyond the complaint in deciding a motion to dismiss. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not look* beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. . . . The focus of any Rule 12(b)(6) dismissal . . . is the complaint." (internal citations omitted; emphasis in original)). Although Claim 2 incorporates in part paragraphs 60-68 containing modification-related allegations (Doc. 1 ¶ 77), the complaint does not make such allegations a basis for breach of the covenant (*id.* at ¶ 78). Nor do Plaintiffs allege facts to show plausibly that either modifications or truthful representations about modifications were a benefit flowing from the contract or contractual relationship with Chase.

The complaint also alleges Chase breached the covenant "by failing to present evidence, upon Plaintiffs' numerous pre-litigation written and verbal requests, including letters, regarding the unidentified and/or misrepresented current foreclosor's authority to

foreclose." Doc. 1 ¶ 78. But Plaintiffs identify no provision of the contract that requires Chase to present such evidence on demand, and have not otherwise shown how Chase's actions somehow deprived them of the benefits promised in the contract. The Court will dismiss Claim 2 for failure adequately to plead a breach of the covenant.

### D. Claim 3 – Misrepresentation.

Defendants argue this claim should be dismissed because (1) Plaintiffs have not sufficiently pled the elements of a fraud cause of action, and (2) Plaintiffs have not pled plausibly that Defendants lack authority to foreclose on the property. Doc. 12 at 8-9. Plaintiffs respond that Arizona recognizes the tort of negligent misrepresentation as stated in Restatement (Second) of Torts § 552, and that Plaintiffs sufficiently pled Chase's negligent misrepresentations that Plaintiffs would likely qualify for a modification. Doc. 14 at 12-13. Plaintiffs also argue that Chase never intended to modify Plaintiffs' loan, that Chase had no authority to modify the loan, and that its misrepresentations induced Plaintiffs to continue making mortgage payments as opposed to seeking alternative relief. *Id.* at 13.

The complaint's third claim for relief, found at paragraphs 82-91, does not allege the negligent statements asserted in Plaintiff's response to the motion to dismiss. The claim says nothing about the loan modification process, but instead alleges that Defendants withheld information concerning the note holder, failed to provide requested information, misrepresented that WaMu had lent money to Plaintiffs, misrepresented that the loan would not be securitized, and made similar false statements. Doc. 1 at 14-16. Although the claim generally incorporates the preceding 80 paragraphs of the complaint, nothing in the claim identifies the loan modification process or negligent misrepresentations in that process as the basis for Plaintiffs' claim. The Court will not permit Plaintiffs to amend their complaint through completely recasting Claim 3 in their response to the motion to dismiss, nor can a plaintiff state a misrepresentation claim merely by incorporating a general description of general harms.

The claim described by Plaintiffs' response fails to state a claim in other respects. Defendants argue the claim described in Plaintiffs' response fails because no modification guarantee is alleged, only the possibility of modification. Doc. 18 at 9. Stated differently, Defendants argue that mere discussion of the possibility of a loan modification cannot constitute negligent misrepresentation. The Court agrees. A claim for negligent misrepresentation "cannot stand on promises of future conduct and, unlike fraud, cannot even stand on a promise made without present intention to perform." *Frank Lloyd Wright Foundation v. Kroeter,* 697 F. Supp. 2d 1118, 1130 (D. Ariz. 2010); *see also McAlister v. Citibank (Ariz.)*, 829 P.2d 1253, 1261 (Ariz. App. 1992) (noting that "[n]egligent misrepresentation is a separate tort from that of intentional fraud," and holding the following: "Negligent misrepresentation requires a misrepresentation or omission of a *fact*. A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation."). Thus, even if Plaintiffs had alleged that Defendants agreed to discuss loan modification while never intending to do so, Plaintiffs would not state a claim under the narrow tort of negligent misrepresentation.[1]

Defendants also argue that Plaintiffs have not sufficiently pled harm because any payments they made in reliance on representations regarding possible modifications were merely performance of their preexisting obligation to pay under the note. Because the claim has been dismissed above, the Court need not decide whether "pecuniary loss" under Restatement (Second) Torts § 552 includes performance of preexisting obligations.

**E.     Claim 4 – Violation of A.R.S. § 6-611.**

Defendants argue the claim should be dismissed because A.R.S. § 6-602(B)(1) limits claims under § 6-611 to loans of ten thousand dollars or less, and Plaintiffs' loan

---

[1] To the extent the caption of the third claim suggests the allegations – had they been pled – might constitute intentional misrepresentation, the allegations have not been pled with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.").

was in excess of eight hundred thousand dollars. Doc. 12 at 9-10. Plaintiffs do not respond to these arguments. Doc. 14. The claim will be dismissed. LRCiv 7.2(i).

### F. Claim 5 – Quiet Title.

Defendants argue the claim should be dismissed because (1) Plaintiffs have failed to allege plausibly an entitlement to clear title, and (2) the contention that the deed of trust no longer secures the note due to separation from the note has not been adequately pled. Doc. 12 at 11. Plaintiffs respond that assuming the complaint's factual allegations as true, Defendants "have no authority to exercise the rights under the Deed of Trust," and that Plaintiffs seek to quiet title only against Defendants and not against the true owners of the note. Doc. 14 at 11 & n.2. Defendants reply that "Plaintiffs' conclusory allegations regarding Defendants' interests in the Property, or lack thereof, are not entitled to a presumption of truth." Doc. 18 at 8. Defendants' position appears to be that Plaintiffs have failed plausibly to allege a superior interest in the property and thereby failed to allege a viable quiet title claim. *See id.*

Under Arizona law, an action to quiet title is statutory, but also includes equitable considerations. *Lavidas v. Smith*, 987 P.2d 212, 218 (Ariz. App. 1999). A party bringing a quiet title action must allege that it has an interest in real property and that the interest is adverse to another person who claims an interest in the same property. A.R.S. § 12-1101(A). Moreover, a title holder may have a superior claim to title as to one party and an inferior claim as to another. *See, e.g., Bowen v. Chemi-Cote Perlite Corp.*, 432 P.2d 435, 443 (Ariz. 1967). Finally, title rights can be disaggregated, and the distinct rights of possession or of alienation can also separately and independently be superior or inferior as between parties. *Cf. id.* Therefore, the dispositive issue is whether Plaintiffs have claims superior to those of Defendants as to the specific rights at issue here, including the right to authorize a trustee to foreclose on the property non-judicially.

The complaint alleges that Plaintiffs' deed of trust and note were intentionally split, that Defendants have no interest to foreclose, that the true note owners who have

the right to foreclose have not asserted that right, and that Defendants cannot show they were authorized by the true note owners to foreclose. These allegations are conclusory when viewed alone. Paragraphs 12-59 lay out in more detail, however, the context within which these allegations are made. Plaintiffs assert in part that WaMu, the entity who issued the loan, securitized the note and thereby transferred its ownership interest along with its rights under the deed of trust to investors. *Id.* at ¶¶ 24, 27, 33-36. Plaintiffs also assert that none of these investors have authorized foreclosure, and that WaMu may not foreclose without this authorization. *Id.* at ¶¶ 35-37. To the extent Chase argues it is successor in interest to WaMu (Doc. 12 at 3:1-2), the allegations apply equally to Chase.

Defendants argue that securitization is lawful and permitted by the deed of trust's assignment provision. *Id.* at 6-7. Although this assertion addresses Plaintiffs' separate allegations challenging securitization as non-consensual and otherwise impermissible (Doc. 1 ¶¶ 27, 32), it is not dispositive of whether the terms of the securitization agreement(s) at play here transferred foreclosure authority from WaMu to other entities. *See* A.R.S. § 33-817 ("The transfer of any contract or contracts secured by a trust deed shall operate as a transfer of the security for such contract or contracts."). Before the Court would reach the issue of whether securitization deprived Defendants of the right to invoke the power of sale clause in the deed of trust – a power Plaintiffs suggest would belong to the investors in the securitized instruments – the Court would need to conclude that the allegations the note was securitized are plausible.

Plausibility under *Iqbal* is a context-specific determination whereby a court employs a two-step process: (1) determine whether the allegations are factual in nature; and (2) drawing on its "judicial experience and common sense" determine whether the factual allegations, assumed true, "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. Some of Plaintiffs' allegations regarding securitization are legal conclusions, but some are allegations of fact. For example, Plaintiffs allege that "Plaintiff's loan was, in fact, securitized and sold to investors in mortgage backed

securities secured by the subject property" (Doc. 1 ¶ 28), and that "[t]he investor or investors in the securities backed by Plaintiffs' mortgage has not attempted to call a default upon the Plaintiffs nor has the investor threatened to foreclose" (*id.* ¶ 37). Drawing on its judicial experience and common sense, the Court does not find the allegation that the note was securitized implausible. It is common knowledge that securitization of mortgage loans was a common practice when this loan was made in 2003, and this Court has seen many cases involving securitized notes. Although the Court cannot determine as a matter of law whether the contracts securitizing this loan fall within the ambit of A.R.S. § 33-817, Plaintiffs are entitled to discovery to prove their claim. The Court notes, however, that under Arizona law a secured debt does not become unsecured by mere assignment of a note without a concomitant assignment of the deed of trust to the same party. *See* A.R.S. § 33-817; *Hill v. Favour*, 84 P.2d 575, 578-79 (Ariz. 1938). Whether the security has been transferred with the assignment of the note during securitization, however, is a question best addressed after discovery.

### G. Claim 6 – Lack of Contract Formation.

Defendants argue Claim 6 should be dismissed because Plaintiffs do not identify statements in the deed of trust that are false and the allegation of no meeting of the minds is not plausible. Doc. 12 at 11-12. Plaintiffs do not respond to these arguments. Doc. 14. The claim will be dismissed. LRCiv 7.2(i).

### H. Claim 7 – Declaratory and Injunctive Relief.

Defendants argue that declaratory and injunctive relief is not a freestanding cause of action, and that because the other claims in Plaintiffs' complaint fail, so must this one. Doc. 12 at 12. Plaintiffs respond that Arizona law countenances declarations of "rights, status, and other legal relations whether or not further relief is or could be claimed." Doc. 14 at 5 (quoting A.R.S. § 12-1831). Plaintiffs further argue that this Court has subject matter jurisdiction to declare who owns Plaintiffs' note, an issue dispositive of whether Defendants have a right to appoint successor trustees and foreclose on the deed

of trust. *Id.* at 5-6.

Because Defendants' argument appears predicated on the lack of any viable claims, the argument is rejected because some of the claims asserted in the complaint have not been dismissed. The Court need not, therefore, address Plaintiffs' argument that a declaratory judgment claim seeking only a declaration and no damages or equitable relief is cognizable in federal court merely because it is authorized by state law.

**IT IS ORDERED:**

1. Green Tree's motion to dismiss (Doc. 15) is **granted** as stated above.

2. Chase and WaMu's motion to dismiss (Doc. 12) is **granted in part and denied in part** as stated above.

3. The Court will set a case management conference by separate order.

Dated this 28th day of July, 2011.

_____
David G. Campbell
United States District Judge